# United States Court of Appeals for the Fifth Circuit

---

No. 23-30277

---

United States Court of Appeals
Fifth Circuit

**FILED**

July 31, 2024

Lyle W. Cayce
Clerk

Team Contractors, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Waypoint NOLA, L.L.C.,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-1131

---

Before Jones, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:[*]

After several years of contentious litigation between Plaintiff Team Contractors, L.L.C., and Defendant Waypoint NOLA, L.L.C., the district court determined Waypoint had "substantially prevailed" in the litigation under the parties' contract. The district court then awarded Waypoint attorneys' fees and costs under the contract's fee-shifting provision. Team

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

appeals from that judgment. Because we conclude neither party substantially prevailed, we REVERSE the district court's judgment.

## I. BACKGROUND

This case arises from a contract dispute concerning the construction of a New Orleans hotel. *Team Contractors, L.L.C. v. Waypoint NOLA, L.L.C.*, 976 F.3d 509, 512 (5th Cir. 2020). "In September 2014, Waypoint . . . , the owner of the project, entered into a construction contract with its general contractor, Team[.]" *Id.* Waypoint also "entered into an architectural contract with Hogan Campis Architects ('HCA'), and HCA retained KLG, L.L.C., as the project's engineer." *Id.* "During construction, the parties learned that KLG's plumbing and mechanical systems did not comply with code requirements." *Id.* "Because of this, the construction drawings were revised through change orders," but the revisions to the drawings "created more work for Team, increased its costs, and delayed completion of the entire project." *Id.*

"Team filed suit against Waypoint, HCA, and KLG for costs and damages Team incurred as a result of the changes and delays." *Id.* "Team brought claims of negligence and breach of contract against Waypoint and claims of negligence against HCA and KLG."[1] *Id.* Team alleged that Waypoint breached the contract between Team and Waypoint ("Contract") by failing to release the remaining contract balance and compensate Team for the extra costs it incurred as a result of the flawed design plans and specifications.

Seventeen months after Team filed the lawsuit, Waypoint released the remaining contract balance, totaling $1,023,514.09, to Team. *See id.* The

---

[1] But "Team did not bring a negligence claim against Waypoint at trial." *Team Contractors, L.L.C.*, 976 F.3d at 512.

case then proceeded to trial on three separate claims: (1) Team's negligence claims against HCA and KLG; (2) Team's breach of contract claim against Waypoint for the extra costs Team incurred as a result of the flawed design plans and specifications; and (3) Team's breach of contract claim against Waypoint for failing to remit the remaining contract balance, which sought the contractual interest that accrued until Waypoint released the funds. The jury concluded that HCA and KLG violated their professional duties of care and were responsible to Team for $565,979.99 in damages for negligence. The jury assigned ten-percent responsibility for Team's damages to Waypoint and Steve Laski, Waypoint's project manager. But the jury also found that Waypoint did not breach the Contract. The court subsequently entered judgment in favor of Team on the negligence claims against HCA and KLG and judgment in favor of Waypoint on the breach of contract claim.

After the entry of this judgment, "Team moved to amend the judgment as to the breach of contract claim." *Id.* at 513. "The district court converted Team's motion into a motion for new trial, . . . granted the motion based on irreconcilability of the verdict," and "vacated the judgment for Waypoint on Team's breach of contract claim." *Id.* The jury in the second trial "found in favor of Team on its claim against Waypoint and awarded $59,746.43 plus interest." *Id.* Waypoint appealed, and this court vacated the judgment entered following the second trial. *Id.* at 513, 522. This court remanded and instructed "the district court to reinstate the judgment resulting from the verdict reached by the jury in the first trial" and "consider attorneys' fees." *Id.* at 522.

Following remand, the district court addressed whether and to whom to award attorneys' fees and costs under the fee-shifting provision in the Contract. That provision, contained in § 15.3.2 of the Contract, provides:

> In the event of any litigation arising under this Agreement, should one party substantially prevail with respect to the matters being litigated, the non-prevailing party shall pay the prevailing party's costs and expenses of such litigation, including attorneys' and experts' fees.

Each party argued that it was the "substantially prevailing party" under this provision. The district court deemed Waypoint the substantially prevailing party and awarded Waypoint attorneys' fees in the amount of $799,985.66 and costs in amount of $38,151.51. Team appeals from this judgment.

## II. DISCUSSION

On appeal, each party argues that it substantially prevailed in the litigation and is entitled to an award of attorneys' fees and costs under the Contract's fee-shifting provision. This court reviews the district court's award of attorneys' fees for abuse of discretion, but the factual determinations underlying the award are reviewed for clear error, and the legal conclusions are reviewed de novo. *Genesis Marine, L.L.C. of Del. v. Hornbeck Offshore Servs., L.L.C.*, 951 F.3d 629, 631 (5th Cir. 2020); *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 461–62 (5th Cir. 2002). We conclude that neither party substantially prevailed and, accordingly, neither party is entitled to attorneys' fees and costs under § 15.3.2 of the Contract.[2]

The Contract explicitly contemplates a scenario in which neither party substantially prevails. Section 15.3.2 provides that "*should* one party substantially prevail with respect to the matters being litigated," the non-prevailing party shall bear the attorneys' fees and costs of the prevailing party. (Emphasis added). Thus, the Contract requires the non-prevailing

---

[2] Team separately argues that the district court erred by failing to conduct a de novo review of the magistrate judge's recommendations concerning attorneys' fees. Because of our disposition, we need not address this argument.

party to pay the attorneys' fees and costs of the prevailing party *only if* the prevailing party substantially prevails. But if neither party substantially prevails, then this fee-shifting provision does not apply.

The question, then, is whether either party substantially prevailed in the litigation. Waypoint prevailed to some degree because it successfully defended against Team's breach of contract claim. *See, e.g.*, *Megatrend Telecomms., Inc. v. Rees Marine, Inc.*, 673 So. 2d 1098, 1100 (La. Ct. App. 1996) (defining "prevailing party" as "'[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue'" (quoting Black's Law Dictionary (5th ed. 1987)).[3]

But did Waypoint *substantially* prevail? At the time the parties executed the Contract, "substantial" was commonly understood to mean "being largely but not wholly that which is specified." *Substantial*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014).[4] In this context, that means a party need not have a "success rate" of 100% in the litigation to be deemed the substantially prevailing party, but its success must be "considerable in amount," "significantly great," or "large in volume or number." *Id.*; *Substantial*, Black's Law Dictionary, (10th ed. 2014).

Waypoint contends it substantially prevailed because it "prevailed in its defense against Team's only claims against it in the Litigation at a rate of 100%, while Team had a 'success' rate of 0%." (Emphasis omitted). In other

---

[3] The Contract does not define "prevail." But the Contract states it is governed by Louisiana law. Courts applying Louisiana law have defined "prevailing party." *See, e.g.*, *Megatrend Telecomms., Inc.*, 673 So. 2d at 1100. Moreover, Louisiana courts consult dictionaries to determine the meaning of an undefined term in a contract. *See Kazan v. Red Lion Hotels Corp.*, 346 So. 3d 267, 270–71 (La. 2022) (collecting cases).

[4] The Contract does not define "substantially" either. *See* note 3.

words, Waypoint says it is the substantially prevailing party because the jury found it did not breach the Contract. But Waypoint overlooks that it paid Team the $1,023,514.09 remaining balance under the Contract after Team filed suit even though, as Waypoint admits, "Team[] fail[ed] to ever satisfy the applicable conditions precedent" for payment.[5] It is therefore reasonable to conclude that Waypoint would not have paid Team the remaining balance under the Contract had Team not filed suit against Waypoint. Thus, relative to what it *could have* achieved in the litigation, Waypoint did not achieve success that was "significantly great" and, therefore, did not substantially prevail.

Team, for its part, contends it substantially prevailed because it achieved the primary objectives of its lawsuit. That is, Waypoint paid Team the remaining balance under the Contract, and Team obtained a favorable judgment on its negligence claim against HCA and KLG, yielding a recovery of $565,979.99 in damages. This argument is flawed for two reasons. First, the Contract does not permit a court to consider a judgment Team won against nonparties to the Contract (i.e., HCA and KLG) in determining whether Team substantially prevailed against Waypoint in the litigation. Indeed, § 15.3.2 applies to litigation "arising under" and between the parties to the Contract: "In the event of any litigation *arising under* this Agreement, should one *party* substantially prevail with respect to the matters being litigated, the non-prevailing *party* shall pay the prevailing *party's* costs and expenses of such litigation, including attorneys' and experts' fees." (Emphases added). This interpretation of § 15.3.2 is buttressed by § 1.1.2 of the contract's General Conditions, which expressly states that nothing in the

_____

[5] Team contends the district court erred in denying it summary judgment on its breach of contract claim. But Team failed to preserve this issue either during or postjudgment in the first trial. The issue was thus waived.

Contract, General Conditions, or other documents comprising the Contract creates a contractual relationship between "any persons or entities other than [Waypoint] and [Team]" and specifically negates the creation of a contractual relationship between Team and HCA or its consultants, such as KLG. Thus, § 15.3.2 is limited to claims between Team and Waypoint. Team's judgment on certain claims against HCA and KLG is irrelevant to determining whether it substantially prevailed against Waypoint.

Second, Team's argument overlooks the fact that, although it obtained the remaining balance under the Contract, it also sought damages in the form of interest on that balance and the extra costs it incurred in performing the contract. But in the reinstated verdict, the jury found in favor of Waypoint on Team's breach of contract claim, and Team lost on damages. As a result, Team's success in the litigation was not "significantly great," relative to what it *could have* achieved.[6]

In conclusion, we disagree with the district court's determination that Waypoint was a substantially prevailing party entitled to over $838,000 in attorneys' fees and costs. On the contrary, neither party *substantially* prevailed in the litigation. Neither party is entitled to attorneys' fees and costs under § 15.3.2 of the Contract.[7]

---

[6] There is a question as to whether Team prevailed *at all* because Team did not win a judgment against Waypoint. Because of our disposition, however, we need not resolve this issue.

[7] Team also argues that Waypoint should be saddled with the attorneys' fees Team incurred under the "third-party litigation" exception to the American rule. *See* RESTATEMENT (SECOND) OF TORTS § 914(2) (AM. L. INST. 1979) (Mar. 2024 update). But the jury did not find Waypoint's conduct was responsible for the Team's attorneys' fees, and we are not aware of any legal authority permitting Team to recover attorneys' fees from Waypoint under the circumstances of this case. Accordingly, Team is not entitled to such fees under the third-party litigation exception. *See Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, 772 F.3d 1031, 1036 (5th

No. 23-30277

For the foregoing reasons, Waypoint's motion for partial dismissal of the appeal is GRANTED.  *See* note 5.  The judgment awarding Waypoint attorneys' fees and costs is REVERSED.

_____

Cir. 2014) ("Under Louisiana law, attorney's fees ordinarily are not recoverable unless specifically authorized by statute or contract."); *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 426 (5th Cir. 2008) (acknowledging the existence of a "third-party litigation" exception in a case concerning Louisiana law *and* where "plaintiffs proved that defendants were legally responsible for their . . . attorney's fees" and "[t]he jury verdict included . . . attorney's fees"); *see also* 1 ROBERT L. ROSSI, ATTORNEYS' FEES § 8:3 (3d ed. 2023) ("An award of attorneys' fees based on the third party litigation doctrine is an element of damages, and thus, . . . must be proved at trial just as any other element of damages, with the determination of the amount of fees to be awarded generally being a matter for the trier of fact.").

No. 23-30277

DANA M. DOUGLAS, *Circuit Judge*, dissenting:

The majority concludes no party substantially prevailed despite a jury finding that Waypoint had not breached the contract. That finding glosses over the applicable law for awarding attorneys' fees and costs, which the magistrate and district court astutely applied in this case. Further absent from the decision are the longstanding rules of contract interpretation. Thus, with all due respect to my colleagues, I dissent.

Team alleged, *inter alia*, that Waypoint breached a construction contract at the moment it withheld any portion of the contract balance after Team substantially completed the project. On July 10, 2017, a year and five months after Team filed its breach of contract claim, Waypoint paid Team for the work. Moving forward with trial, Team pursued its breach of contract claim and emphasized that the timing of the 2017 payment was improper. Waypoint explained that it had withheld payment because Team had not submitted a proper final waiver of liens until that time. Then, on March 9, 2018, the jury returned a verdict finding that Waypoint did not breach the contract and, concerning Team's claim for damages based on contractual interest for Waypoint's payment, the jury awarded no damages.

Subsequently, a panel of this court directed the district court to uphold the jury trial's verdict in favor of Waypoint and instructed the district court to determine "which party is the 'substantially prevailing party' under the contract *in light of the results of the first trial.*" *Team Contractors, L.L.C. v. Waypoint Nola, L.L.C.*, 976 F.3d 509, 522 (5th Cir. 2020) (emphasis added). The district court reasonably determined that Waypoint was the substantially prevailing party based on the jury's verdict.

9

Today, the majority's conclusion rests on the assumption that "Waypoint would not have paid Team the remaining balance under the Contract had Team not filed suit against Waypoint." That assumption is untethered to the facts and law. Waypoint explained why its' payment was delayed and thus the majority's assumption is unwarranted. While reversing the district court's decision, and ignoring the jury's verdict, the majority fails to reference any principles of contract law and fails to discuss any potential error by the magistrate and district court. As such, I will briefly discuss the applicable legal standard.

The contract between Team and Waypoint is governed by Louisiana law. "While Louisiana law controls the award and reasonableness of the *fee award* in this case, both parties rely on the lodestar method." "A district court's judgment awarding fees is reviewed for an abuse of discretion." *Petteway v. Henry*, 738 F.3d 132, 136 (5th Cir. 2013); *see Team Contractors, LLC v. Waypoint NOLA, LLC*, No. CV 16-1131, 2021 WL 4460525, at *2 (E.D. La. Sept. 29, 2021). As to the award of costs, "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). In this case, Waypoint is not limited to § 1821 or § 1920 because it has a contractual basis for costs under Article 15.3.2 of the contract, which authorizes recovery of a party's costs and expenses.[8]

"Parties are free to contract for any object that is lawful, possible[,] and determined or determinable," LA. CIV. CODE art. 1971, and "the contract constitutes the law between the parties," *Barrera v. Ciolino*, 636

---

[8] Notably, the majority does not distinguish the district court's award of fees or costs, despite their distinct standards, and reverses the award as a lump sum.

So.2d 218, 222 (La. 1994) (citing LA. CIV. CODE art. 1983); *see Luv N'
Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "When the
words of the contract are clear and explicit and lead to no absurd
consequences, no further interpretation may be made in search of the parties'
intent." LA. CIV. CODE art. 2046. In addition, "[e]ach provision in a
contract must be interpreted in light of the other provisions so that each is
given the meaning suggested by the contract as a whole." LA. CIV. CODE
art. 2050. Furthermore, "[a] contract should be interpreted so as to avoid
neutralizing or ignoring a provision or treating it as surplusage." *Hawthorne
Land Co. v. Equilon Pipeline Co., LLC*, 309 F.3d 888, 893 (5th Cir. 2002)
(citation omitted); *Luv N' Care, Ltd.*, 844 F.3d at 447.

The district court correctly construed Article 15.3.2 as requiring a
choice between Waypoint and Team for status as the substantially prevailing
party. Indeed, a prior panel instructed the district court to find "*which* party
is the 'substantially prevailing party' under the contract in light of the results
of the first trial." *Team Contractors, L.L.C.*, 976 F.3d at 522. Likewise, the
contract limits the status of a substantially prevailing party to a single party:
"should *one* party substantially prevail with respect to the matters being
litigated." Thus, the parties' intention that there be one substantially
prevailing party can easily be gleaned from the terms of the contract. *See* LA.
CIV. CODE art. 2046. Moreover, neither party argued below that there
could be no substantially prevailing party. In fact, there are multiple instances
in the record where Team does not object to the award of fees or costs to
Waypoint. With good reason. It would be "absurd" to suggest that, following
multiple trials and appeals over a span of eight years, Article 15.3.2 does not
allow the party who successfully defended the litigation to recover attorneys'
fees and costs. *Id.* Thus, it appears that both parties intended for the fee-
shifting provision to be effective when one party succeeds in the litigation,
but not when one party wins a partial verdict.

To be clear, reliance on a dictionary definition of "substantial" does not fully explain Article 15.3.2 of the contract. "A holistic reading of the provision better harmonizes the entirety of the provision and accords with other parts of the parties' contract." *BMC Software, Inc. v. Int'l Bus. Machines Corp.*, No. 22-20463, 2024 WL 1880132, at *4 (5th Cir. Apr. 30, 2024) (Jones, J.); *see* La. Civ. Code art. 2050. Moreover, the majority's interpretation renders "prevailing party" superfluous as it makes the jury's findings null and void. *Id.* At best, that would seemingly contradict Louisiana's contract laws. *See* La. Civ. Code art. 2049.

The purpose of Article 15.3.2 is to prohibit the evasion of liability for "any litigation arising under" the contract. Supporting that specific provision, Article 15 imposes obligations and grants rights that are clearly intended to have legal effect, including continued performance under the contract during the pendency of a dispute, notice requirements, and mediation as a condition precedent to initiating litigation. The majority's decision appears to defeat the intended purpose by concluding that Waypoint's 100% successful defense does not confer a 'substantially prevailing party' status. *But see, e.g.*, *Megatrend Telecomms., Inc. v. Rees Marine, Inc.*, 673 So. 2d 1098, 1100 (La. Ct. App. 1996) (defining "prevailing party" as "[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue"); *Trafficware Grp., Inc. v. Sun Indus., L.L.C.*, 749 F. App'x 247, 253 (5th Cir. 2018) (concluding that although the general contractor had to pay the subcontractor "the amount remaining under the subcontract, that amount did not reflect any judgment of liability for breach of contract against [the general contractor]" and therefore the subcontractor was not a prevailing party). Thus, while reading the provision in context, the parties' intent is clear, and Waypoint is the substantially prevailing party.

Turning to the results of the trial, "we uphold a jury verdict if it is supported by evidence of the type and quality that fairly supports the verdict, even if the evidence would support other outcomes." *Mathis v. Exxon Corp.*, 302 F.3d 448, 453 (5th Cir. 2002) (citing *Gann v. Fruehauf Corp.*, 52 F.3d 1320, 1326 (5th Cir. 1995). The district court's determination that Waypoint was the substantially prevailing party is based on the jury finding that Waypoint did not breach the contract and awarding Team $0 following trial. Specifically, the district court found that "Waypoint's payment . . . was presented to the jury, and the jury found Waypoint had not breached the Prime Contract by delaying the payment until July 10, 2017, because an adequate lien waiver was not presented until that time. That this claim was decided by the jury is clear from an examination of the evidence and arguments at trial, as well as the jury's verdict." Thus, "Waypoint's payment when payment was due, even though suit had been filed, does not confer prevailing party status on Team; instead, Waypoint merely performed as contemplated by the agreement." The majority does not point to any error in such findings, nor does it suggest how the district court abused its discretion in awarding attorneys' fees. Instead, the majority contends that no party substantially prevailed because Waypoint's payment is circumstantial evidence that "would support other outcomes." *Mathis*, 302 F.3d at 453. Therefore, based on our standard of review, it is hard to fathom reversing the jury verdict or district court's decision.

Moreover, contrary to the majority's conclusion, the "plausible view of this verdict is that the jury thought that Waypoint caused Team to suffer damages but did so *without breaching the contract or any other duty* owed to Team. Under that view, Waypoint was causally responsible for some of Team's damages yet *not liable* for them." *Team Contractors, L.L.C.*, 976 F.3d at 523 (Clement, J., concurring) (emphases added). In my view, it is improper to conclude that Waypoint's payment hinders its status as the substantially

prevailing party because that conclusion contravenes a bedrock principle of contract law: mitigation of damages.

Courts typically do not fault a party for mitigating damages. "An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." LA. CIV. CODE ANN. art. 2002; *see Weinhoffer as trustee of Offshore Specialty Fabricators, L.L.C. v. Davie Shoring, Inc.*, No. 23-30566, 2024 WL 1169409, at *6 (5th Cir. Mar. 19, 2024) (considering breach of contract claim and failure to mitigate damages). "A duty to mitigate arises when there is a breach followed by damages. The duty of an injured party to mitigate damages presumes that damage has occurred following the obligor's breach." *Lake Charles Harbor & Terminal Dist. V. Reynolds Metal Co. LLC*, No. 2:17-CV-01114, 2019 WL 13108705, at *5 (W.D. La. Oct. 1, 2019). Here, Waypoint made reasonable efforts to mitigate damages by paying the contract balance with interest prior to trial, and the jury took that into consideration in determining that Waypoint was not liable for breach. If Waypoint had not paid the contract balance, the damages would have increased based on interest alone. Team continued the litigation for years after Waypoint paid the contract balance, thus it is reasonable to conclude that Team intended to seek more than the contract balance. Worse, Team expressly reserved the right to request more damages than the contract price. Indeed, under Louisiana law, Waypoint was required to "make reasonable efforts to mitigate [those] damages." LA. CIV. CODE ANN. art. 2002. Thus, the majority's decision seemingly contradicts the well-settled principle of mitigating damages.

In conclusion, because the majority improperly dismisses the jury's verdict, misapplies the standard of review, and misapplies black letter contract law, I respectfully dissent.